**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
MOHAMAD IBRAHIM SHNEWER,          :
                                  :
              Petitioner,         :          Civ. No. 13-3769 (RBK)
                                  :
      v.                          :
                                  :
UNITED STATES OF AMERICA,         :          **OPINION**
                                  :
              Respondent.         :
_____ :

**ROBERT B. KUGLER, U.S.D.J.**

## I.      INTRODUCTION

Petitioner, Mohamad Ibrahim Shnewer, is a federal prisoner proceeding with a motion to

vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. On March 7, 2016, this

Court denied Mr. Shnewer's § 2255 motion and the case was closed. On April 4, 2016, Mr.

Shnewer filed a motion to alter/amend that judgment. Accordingly, the Clerk will be ordered to

reopen this case so that petitioner's motion for relief from judgment can be decided. For the

following reasons, petitioner's motion will be denied.

## II.      BACKGROUND

The parties are well-versed in the facts giving rise to petitioner's ultimate criminal

conviction and sentence at this stage of the proceedings and need not be recited in full again in

this Opinon. As this Court noted in a prior opinion, petitioner, along with four co-defendants,

were brought to trial on various charges including conspiracy to murder members of the United

States military. Neither petitioner, nor his four co-defendants testified at trial. Ultimately,

petitioner (along with the co-defendants) was convicted of that conspiracy charge and was

sentenced to life imprisonment.[1] Three other co-defendants, Dritan Duka, Shain Duka and Eljvir Duka (hereinafter referred to as the "Dukas") were also entenced to life imprisonment. Another co-defendant, Serdar Tatar, received a sentence of 396 months imprisonment.

After petitioner's direct appeal concluded,[2] he filed a *pro se* motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 in this Court. Petitioner's co-defendants also filed § 2255 motions. The Dukas filed a counseled joint § 2255 brief and Mr. Tatar separately filed a *pro se* § 2255 motion. Mr. Shnewer's *pro se* § 2255 motion raised the following claims:

1. Ineffective assistance of counsel by failing to object to the sentencing court's failure to give meaningful consideration to the need to avoid unwarranted sentencing disparities.

2. Ineffective assistance of counsel in failing to raise the sentencing court's impermissible use of religious beliefs to sentence him as well as a direct claim that this Court used petitioner's religion to determine his sentence.

3. Ineffective assistance of counsel for failing to communicate a plea offer to petitioner or pursue plea discussions with the government.

4. All claims raised by petitioner's co-defendants in their separate § 2255 motions.

On September 30, 2015, this Court denied the Dukas § 2255 motion with the exception of one claim. The sole claim that was not decided at that time was the Dukas' claim that their decision not to testify at trial was the result of attorney coercion. The Dukas included declarations in their § 2255 proceedings that specifically stated the circumstances giving rise to this claim. This Court summarized the Dukas' declarations as follows in a previous Opinion:

> Shain Duka filed a declaration whereby he states that he told his
> attorney, Mr. Michael Riley, Esq., before and during his trial that

---

[1] The other co-defendants were convicted of other charges that are not relevant to this Opinion and need not be detailed here.

[2] The Third Circuit reversed petitioner's conviction on one charge that is not relevant to this Opinion.

he wanted to testify. However, near the end of the trial, Shain Duka recalls that the attorneys that represented him and his brothers told them that "not only should [they] not testify, they were not prepared to put any of [them] on the stand." Shain Duka also declares that [h]ad I thought that my lawyer was prepared, I would have insisted on taking the witness stand[.]"

Eljvir Duka's filed declaration is even more specific than Shain's as he states as follows:

> After the government rested its case, there was a meeting in the courthouse attended by my co-defendants and all the lawyers. I stated that I wished to testify. Mr. Archie [Eljvir's trial counsel] stated that I should not and that in any event he was not prepared to put me on the stand. I still wished to testify and told Mr. Archie so. However, over the course of the meeting, I came to the conclusion that Mr. Archie was not prepared and because of that I would probably hurt my chances if I testified. It is for that reason that I told the Court that I decided not to testify.

Dritan Duka also recounts the purported coercion he felt from his counsel not to testify:

> It was between 3–6 months before the start of trial that I told my attorney Michael Huff that I wanted to testify. He initially was not opposed. However, during a legal visit some time prior to trial, he asked me some more questions that may be posed on cross examination. I do not recall specific questions only that they concerned my belief in a Muslim's jihad obligation. Mr. Huff told me that based on my answers the jury would likely think I was an extremist and convict me. At the conclusion of that meeting I had not changed my mind and still wanted to testify.
> We did not discuss the issue of my testimony again until after the Government concluded its case. I recall a meeting where all of the defendants and lawyers were present. Mr. Huff told me that I should not testify. I stated that I still wanted to do so. He added that he was not prepared to put me on the stand and that if I took the stand it would hurt the case.

> I only agreed with his decision because he told me
> that he was not prepared and I felt that if he was
> unprepared my taking the stand would do more
> harm than good. It was for that reason that I told the
> Court that I chose not to testify.
> Mr. Huff never informed me, nor was I aware that I
> could have overruled his decision and testified even
> if he thought it was a bad idea. Had I known that I
> would have as [sic] asserted that right and requested
> that Mr. Huff request some time to prepare me.
>
> In addition to discussing the purported coercion each Duka brother
> felt, each discusses in their declarations what they would have
> testified to if they took the stand at their trial to varying degrees.
> The Dukas assert that their respective counsel's statements that
> they were unprepared to present their testimony at trial was
> coercive so as to make their decision not to testify unknowing,
> involuntary and unintelligent.

*Duka v. United States*, Nos. 13-3664, 13-3665, 13-3666, 2015 WL 5768786, at *4–5 (D.N.J.
Sept. 30, 2015). Based on these specific declarations outlining their claims, this Court
determined that an evidentiary hearing was warranted before rendering a decision on the Dukas'
attorney coercion claim. On January 6, 2016, this Court conducted on evidentiary hearing on the
Dukas' claim that they were coerced not to testify at trial by their attorneys. The Dukas and their
respective trial counsel each testified at the January 6, 2016 hearing. On May 31, 2016, this
Court denied the Dukas' attorney coercion claim. *See Duka v. United States*, Nos. 13-3664, 13-
3665, 13-3666, 2016 WL 3063868 (D.N.J. May 31, 2016)

Mr. Shnewer's § 2255 proceedings have not followed a similar path when compared to
the Dukas. Indeed, Mr. Shnewer filed his § 2255 motion *pro se* in June, 2013. The government
filed its response to the § 2255 motion and then Mr. Shnewer filed a reply. With respect to Mr.
Shnewer's fourth claim that sought to incorporate all of his co-defendants' claims, Mr. Shnewer
stated in his reply brief that he could not brief the claims of his co-defendants because he did not
have access to those motions at that time. (*See* Dkt. No. 13 at p.1 n.1) Before this Court issued its

decision on Mr. Shnewer's § 2255 motion, habeas counsel entered an appearance on behalf of

Mr. Shnewer on December 2, 2015. At no time, however, between when counsel entered an

appearance on December 2, 2015, and when this Court denied Mr. Shnewer's § 2255 motion on

March 7, 2016, did Mr. Shnewer's habeas counsel ever seek or request additional time to

supplement Mr. Shnewer's § 2255 motion.

On March 7, 2016, this Court denied all of Mr. Shnewer's claims. With respect to Mr.

Shnewer's fourth claim that sought to incorporate the co-defendants' claims, this Court stated as

follows:

> [W]ith the exception of one claim, all of the remaining claims
> brought by the Duka brothers and Mr. Tatar have now been denied
> by this Court. *See Tatar v. United States*, No. 13-3317, 2016 WL
> 589671 (D.N.J. Feb. 11, 2016); *Duka v. United States*, Nos. 13-
> 3664, 13-3665, 13-3666, 2015 WL 5768786 (D.N.J. Sept. 30,
> 2015). Accordingly, Mr. Shnewer is not entitled to relief on those
> claims as well for the reasons discuss[ed] in those Opinions.
>
> The sole remaining claim with respect to the Duka brothers and
> Mr. Tatar in this case is the Duka brothers' claim that they did not
> voluntarily waive their right to testify at trial because their decision
> was the product of attorney coercion. *See Duka*, 2015 WL
> 5768786, at *4-6. The Duka brothers each submitted declarations
> in support of this claim and an evidentiary hearing was conducted
> on this claim on January 6, 2016. However, Mr. Shnewer does not
> allege in any fashion whatsoever that his decision not to testify was
> the result of attorney coercion due to Mr. Cipparone stating to him
> that he was unprepared to have him testify. Therefore, this clearly
> distinguishes the Duka brothers' claims from Mr. Shnewer, who
> has made no showing (nor even argument) that he did not
> voluntarily waive his right to testify because it was the result of
> attorney coercion. Therefore, the fact that this Court conducted an
> evidentiary hearing on the Duka brothers' claim has no impact on
> Mr. Shnewer's § 2255 motion that makes no such allegations with
> respect to his right to testify. Accordingly, Mr. Shnewer is not
> entitled to relief on Claim IV.

*Shnewer v. United States*, No. 13-3769, 2016 WL 867461, at *24 (D.N.J. Mar. 7, 2016).

On April 4, 2016, Mr. Shnewer, through his habeas counsel, filed a motion to alter,

amend or provide relief from that judgment pursuant to Federal Rules of Civil Procedure 59 and

60. That motion argues as follows:

> Petitioner has a legitimate argument regarding attorney coercion
> that should be presented at an evidentiary hearing. Counsel have
> conferred with Petitioner who confirmed that his decision not to
> testify was not voluntary. Details of this claim are set forth in more
> detail below, as well as in Petitioner's Declaration, attached hereto
> as Exhibit A. That no request to supplement Petitioner's *pro se* §
> 2255 pleading prior to the Court issuing its Order was not the fault
> of Petitioner, but rather of his counsel. Under these unique
> circumstances, particularly given the gravity if Petitioner's life
> sentence, it would be appropriate, just, and fair, for this Court to
> alter, amend, or order relief from its judgment denying Petitioner's
> § 2255 motion to allow his retained counsel to assist him to
> develop his attorney coercion claim.

(Dkt. No. 40-1 at p.7-8) Mr. Shnewer attaches a declaration to his motion to alter judgment

which states as follows:

> [F]rom the outset of the case, I consistently told my attorney Rocco
> Cipparone that I had to testify. We had numerous conversations
> where I explained to him that I intended to testify. Early on he
> explained to me in order to testify, that he would have to prepare
> me. After that, we had numerous conversations where he explained
> that preparation was important before someone could testify.
>
> During almost every visit we had, I reiterated my desire to testify. I
> told him I wanted him to prepare me so I could be ready. Each
> time, he put me off by saying that we would eventually get to that.
> He told me not to worry, and that there would be time to prepare.
> As we got closer to trial, I was consistently telling him that I
> intended to testify and I asked him to prepare me. He told me he
> would prepare me. But, he never did.
>
> As we got to the end of the Government's case I became very
> nervous. My attorney had told me that I needed to be prepared in
> order to testify and we had not done any preparation. After the
> government rested, all of the attorneys came into the lockup. All of
> us, attorneys and defendants, were together in the lockup area.

I remember that I told Mr. Cipparone that I wanted to testify. My attorney told me that he was confident that we had won the case through cross-examination and that my testimony would only harm things. He was adamant that the case was won and I recall him saying something along the lines that he was 100 % certain.

Regardless, I continued to persist in wanting to testify because when I heard everything at trial, it sounded really bad on its own without an explanation. Then Mr. Cipparone told me that I should not testify, I was not prepared to testify, and I would only hurt myself by doing so. I knew that I needed to be prepared to testify because he had told me that so many times. I remember asking him if we could request a continuance from the Court so that he could have the time to prepare me. But, he said that the Court would not grant such a continuance.

This conversation went on for a period of time. Eventually, I remember that my lawyer and other lawyers were asking their clients to help convince me not to testify.

Because I was not prepared, my attorney was not going to prepare me, and because my attorney said I was going to cause serious harm to my case and to other people's cases, I did not testify. I felt like my attorney ultimately made the decision for me, as I was in no position to continue forward alone to testify.

Had I been prepared and properly advised, I would have testified in my own defense. I had always intended to do so when the trial was inevitable, and I continuously told my lawyer that. By refusing to prepare me and telling me I could not testify without preparation, I believe my attorney made the decision for me.

(Dkt. No. 40-1 at p.18-20) The government filed a response in opposition to the motion to alter/amend the judgment. Thereafter, Mr. Shnewer, through his habeas counsel, filed a reply brief in support of the motion.

### III.    STANDARD OF REVIEW

Mr. Shnewer invokes both Federal Rule of Civil Procedure 59(e) and 60(b)(6) to support his motion to alter/amend the judgment. Motions for reconsideration are filed pursuant to Federal Rule of Civil Procedure 59(e) and are governed by Local Civil Rule 7.1(i) which allows a party

to seek reconsideration by the Court in matters in which the party believes the judge has "overlooked." *See Carney v. Pennsauken Twp. Police Dep't*, No. 11–7366, 2013 WL 4501454, at *1 (D.N.J. Aug. 21, 2013) (citations omitted). "The standard for reargument is high and reconsideration is to be granted only sparingly." *Yarrell v. Bartkowski*, No. 10–5337, 2012 WL 1600316, at *3 (D.N.J. May 7, 2012) (citing *United States v. Jones*, 158 F.R.D. 309, 314 (D.N.J. 1994)). To be successful on a motion for reconsideration, a petitioner has the burden to demonstrate: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted); *see also Berry v. Jacobs IMC, LLC*, 99 F. App'x 405, 410 (3d Cir. 2004). Mr. Shnewer relies on the need to prevent manifest injustice to support his motion.

  With respect to Rule 60(b)(6), a court:

> may relieve a party from a final judgment for any reason that justifies relief. The standard for granting a Rule 60(b)(6) motion is a high one. The movant must show "extraordinary circumstances" to justify reopening a final judgment. *Gonzalez* [*v. Crosby*]*,* 545 U.S. [524,] 536 125 S.Ct. 2641 [(2005))]
>
> > [E]xtraordinary circumstances involve[ ] a showing that[,] without relief from the judgment, "an 'extreme' and 'unexpected' hardship will result." This "hardship" requirement may sometimes be satisfied when the judgment "precluded an adjudication on the merits." But extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices.

*Michael v. Wetzel*, 570 F. App'x 176, 180 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 1532, 191 L.

Ed. 2d 562 (2015), *reh'g denied*, 135 S. Ct. 1918, 191 L. Ed. 2d 781 (2015) (quoting *Budget*

*Blinds, Inc. v. White,* 536 F.3d 244, 255 (3d Cir. 2008)).

## IV.   DISCUSSION

Mr. Shnewer claims that not altering the judgment that denied his § 2255 motion would

constitute manifest injustice because he is entitled to at least an evidentiary hearing on his claim

that his decision not to testify was the result of attorney coercion. Certainly, a claim that a

defendant's decision not to testify as the result of attorney coercion raises constitutional

concerns. Indeed, as this Court previously explained in deciding the Dukas' attorney coercion

claim:

> The Supreme Court has held that the right to
> "testify on one's own behalf at a criminal trial" is
> grounded in three provisions of the Constitution.
> *Rock v. Arkansas*, 483 U.S. 44, 51, 107 S. Ct. 2704,
> 97 L.Ed. 2d 37 (1987); *see also United States v.*
> *Van De Walker*, 141 F.3d 1451, 1452 n.1 (11th Cir.
> 1998) (acknowledging that right to testify is
> constitutional), *cert. denied*, 525 U.S. 912, 119 S.
> Ct. 257, 142 L.Ed.2d 211 (1998); *Brown v. Artuz*,
> 124 F.3d 73, 76 (2d Cir. 1997) (same), *cert. denied*,
> 522 U.S. 1128, 118 S. Ct. 1077, 140 L.Ed. 2d 135
> (1998); *Ortega v. O'Leary*, 843 F.2d 258, 261 (7th
> Cir. 1988) (same). First, the "Fourteenth
> Amendment's guarantee that no one shall be
> deprived of liberty without due process of law
> include[s] a right to be heard and to offer
> testimony." *Rock*, 483 U.S. at 51, 107 S. Ct. 2704;
> *see also United States ex rel. Wilcox v. Johnson*,
> 555 F.2d 115, 118 (3d Cir. 1977) (right to testify
> "emanate[s] from the due process requirements of
> the Fourteenth Amendment") (citation omitted).
> Second, the right to testify also derives from the
> Compulsory Process Clause of the Sixth
> Amendment, "which grants a defendant the right to
> call 'witnesses in his favor.' " *Rock*, 483 U.S. at 52,
> 107 S. Ct. 2704 (quoting *Washington v. Texas*, 388

U.S. 14, 17–19, 87 S. Ct. 1920, 18 L.Ed. 2d 1019 (1967)). At times, "the most important witness for the defense ... is the defendant himself." *Id.* Finally, the right to testify is protected by the Fifth Amendment's guarantee against compelled testimony. *Id.* That is, the privilege to refuse to testify is part and parcel of the privilege to testify if one wishes to do so. *Id.* at 53, 107 S. Ct. 2704.

The right is personal and can be waived only by the defendant, not defense counsel. [*United States v.*] *Pennycooke*, 65 F.3d [9,] 10 [ (3d Cir. 1995) ]; *Johnson*, 555 F.2d at 118 (observing that right to testify "can be waived only by the defendant and not by his attorney") (internal quotation marks and citation omitted); *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) ("This right [to testify] can be waived only by the defendant, not by his counsel."), *petition for cert. filed*, (U.S. Jul. 13, 1998) (No. 98–5802); *Brown*, 124 F.3d at 77 ("[E]very circuit that has considered this question has placed the defendant's right to testify in the 'personal rights' category—i.e., waivable only by the defendant himself regardless of tactical considerations.") (citations omitted); *Ortega*, 843 F.2d at 261 ("If a defendant insists on testifying, no matter how unwise such a decision, the attorney must comply with the request.") (citation omitted). If a defendant does waive this right, the waiver must be knowing, voluntary and intelligent. *Pennycooke*, 65 F.3d at 11; *Emery*, 139 F.3d at 198; *Ortega*, 843 F.2d at 261.

*United States v. Leggett*, 162 F.3d 237, 245-46 (3d Cir. 1998) (footnote omitted).

Where a petitioner claims that his attorney was ineffective by denying him the right to testify, the *Strickland* standard is used to analyze the claim. *See Palmer v. Hendricks*, 592 F.3d 386, 394 (3d Cir. 2010) (citations omitted).

*Duka*, 2016 WL 3063868, at *4–5. Neither party has provided this Court with a precise standard from the United States Supreme Court or the United States Court of Appeals for the Third Circuit as to what constitutes manifest injustice under Rule 59(e), nor has this Court found a

precise manifest injustice standard from either of these two higher courts. *See Teri Woods Publ'g, L.L.C. v. Williams*, No. 12-4854, 2013 WL 6388560, at *2 (E.D. Pa. Dec. 6, 2013) ("The . . . Third Circuit has not definitively circumscribed the 'manifest injustice' standard.") (citing *Conway v. A.I. Dupont Hosp. for Children*, No. 04-4862, 2009 WL 1492178, at *6 (E.D. Pa. May 26, 2009)). Nevertheless, Courts within this Circuit provide insight as to how this Court should define the contours of what does and does not constitute manifest injustice. One court has stated:

> There is no judicial consensus regarding the meaning of the term "manifestly unjust" as it pertains to a Rule 59(e) motion, but several courts have applied the Black's Law Dictionary definition, which states that "manifest injustice" is "an error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds." *Conway,* 2009 WL 1492178, at *6 n. 8 (citation omitted); *accord Brown v. Zickefoose,* 2011 WL 5007829, at *2 n. 3 (D.N.J. Oct. 18, 2011); *Tri–State Truck Ins., Ltd. v. First Nat'l Bank of Wamego,* 2011 WL 4691933, at *3 (D. Kan. Oct. 6, 2011). A party may only be granted reconsideration based on manifest injustice if the error is "apparent to the point of being indisputable." *Tri–State Truck Ins.,* 2011 WL 4691933, at *3 (quoting *Shirlington Limousine Transp. Inc. v. U.S.* 78 Fed. Cl. 27, 31 (2007)). In order for a court to reconsider a decision due to 'manifest injustice,' the record presented must be "so patently unfair and tainted that the error is manifestly clear to all who view [it.]" *Conway,* 2009 WL 1492178, at *6 n. 8 (citation omitted).

*In re Roemmele*, 466 B.R. 706, 712 (Bankr. E.D. Pa. 2012). Furthermore, in deciding a motion for reconsideration under the manifest injustice standard, this Court is guided by the principle that "it is not the job of courts deciding motion for reconsideration to rescue parties from their strategic litigation choices . . . (nor) rescue parties from their own errors." *Conway*, 2009 WL 1492178, at *7; *see also Johnson v. Diamond State Port Corp.*, 50 F. App'x 554, 560 (3d Cir. 2002) (error by party in not timely submitting affidavit was not manifest injustice because counsel's carelessness was solely responsible); *Teri Woods Publ'g*, 2013 WL 6388560, at *3 (no

manifest injustice where decision not to enter default against defendants was either a strategic

choice or an error on the part of the plaintiffs); *In re Dreyfus Mt. Funds Fee Litig.*, No. 04-0128,

2006 WL 1699443, at *2 (W.D. Pa. June 20, 2006) (no manifest injustice shown where plaintiff

made decision not to file a motion for leave to amend either through mistake, ignorance or

tactical maneuvering). Indeed, relying on several cases from the United States Court of Appeals

for the District of Columbia, the Eastern District of Pennsylvania has noted that "outcome-

determinative litigation mistakes that were easily avoidable cannot be invoked by the party who

made the mistakes to establish a manifest injustice under Rule 59." *Conway*, 2009 WL 1492178,

at *8 (citing *Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C. Cir. 2004); *Fox v. Am. Airlines, Inc.*, 389

F.3d 1291, 1296 (D.C. Cir. 2004) (remaining citation omitted)).

      Mr. Shnewer argues that there is manifest injustice in this case. He states that it is

appropriate for this Court to consider the fact that he is currently serving a life sentence in his

attempt to show manifest injustice. He further claims that he is not seeking a "second bite at the

apple," but instead is seeking "to have the full factual circumstances of his claims . . . judged on

the merits." (Dkt. No. 40-1 at p.12-13) This Court finds Mr. Shnewer's manifest injustice

arguments unpersuasive for the following reasons.

      The decision to simply rely on and incorporate the Dukas' attorney coercion claim into

his § 2255 motion was either a strategic choice by Mr. Shnewer or was in error. Unlike the

Dukas who each provided this Court with a detailed declaration of the conversations and

circumstances giving rise to their attorney coercion claim as it related to each's *specific trial*

*attorney*, Mr. Shnewer provided no such material to this Court prior to judgment being entered.

Nowhere in the record that was before this Court prior to this motion to alter/amend did Mr.

Shnewer ever make this Court aware that Mr. Cipparone coerced him not to testify. Furthermore,

nowhere in the record before this Court prior to its decision did Mr. Shnewer state what his testimony would have been had he testified. Thus, Mr. Shnewer never made any argument with supporting facts to support an attorney coercion claim prior to the March 7, 2016 Opinion.

Mr. Shnewer stated in his reply brief to his § 2255 motion that he could not brief the claims he was seeking to incorporate into his § 2255 motion because he did not have access to those dockets and filings. However, Mr. Shnewer certainly had the factual knowledge of what transpired between him and Mr. Cipparone from his own personal experience to provide this Court with the factual underpinnings of an attorney coercion claim. Thus, Mr. Shnewer cannot show that it was necessary for him to view the Dukas' dockets to proceed with *his own* attorney coercion claim. Despite personal knowledge of what purportedly transpired between himself and Mr. Cipparone, no such factual information was ever provided to this Court until Mr. Shnewer attached his declaration to this motion after judgment was entered.

It is worth noting that prior to this Court's March 7, 2016 disposition of Mr. Shnewer's § 2255 motion, habeas counsel entered an appearance on Mr. Shnewer's behalf on December 2, 2015. Nevertheless, at no point in the three months after Mr. Shnewer's counsel entered an appearance did they ever seek to supplement the record with facts to support an attorney coercion claim. By December, 2015, this Court had already ordered an evidentiary hearing on the Dukas attorney coercion claim. In ordering an evidentiary hearing, this Court specifically cited to the factual underpinnings that the Dukas laid out to support their claims through their declarations. Nevertheless, despite all of this being part of the public record, Mr. Shnewer's habeas counsel never sought nor inquired about supplementing the record on Mr. Shnewer's behalf to support an attorney coercion claim.

Whether it was a strategic choice or an error by Mr. Shnewer and his counsel in failing to seek to supplement the record with facts to support *a specific* attorney coercion clam with respect to himself and Mr. Cipparone does not matter. To reiterate, "it is not the job of courts deciding motions for reconsideration to rescue parties from their strategic litigation choices . . . (nor) rescue parties from their own errors." *Teri Woods Publ'g*, 2013 WL 6388560, at *3 (internal quotation marks and citations omitted).

Additionally, reconsideration based on manifest injustice requires that the error be apparent to the point of being indisputable. *See id.* (citing *In re Titus*, 479 B.R. 362, 367-68 (Bankr. W.D. Pa. 2012)). Some examples that courts have given for what constitutes indisputable errors include a defendant's guilty plea that is involuntary or that is based on the plea agreement that the prosecution rescinds." *Id.* In Mr. Shnewer's case, however, there was no indisputable error. Indeed, Mr. Shnewer never made specific allegations with respect to attorney coercion as it related to his *specific* attorney that necessitated this Court ordering an evidentiary hearing on such a claim. Indeed, even at this juncture, Mr. Shnewer's attorney coercion claim is far from indisputable. This lack of indisputability provides yet another reason why Mr. Shnewer has failed to show manifest injustice to warrant granting his motion for to alter/amend the judgment.

Mr. Shnewer's reliance on *Gutierrez v. Gonzales*, 125 F. App'x 406 (3d Cir. 2005) in attempting to show that he has established manifest injustice is also unpersuasive. In *Gutierrez*, the petitioner was placed in immigration removal proceedings based on aggravated felony convictions. *See* 125 F. App'x at 408. He was ordered removed by an Immigration Judge who deemed him ineligible for any relief from removal. *See id.* Gutierrez appealed to the Board of Immigration Appeals ("BIA") and requested that he be found eligible for discretionary relief under former section 212(c) of the Immigration and Nationality Act ("INA"). *See id.* The BIA, in

14

a 3-2 Opinion determined that Section 212(c) was not available to aggravated felons. *See id.* at 409. However, such a decision proved to be in error as stated in a subsequent case by the United States Supreme Court in *INS v. St. Cyr*, 533 U.S. 289 (2001). Thus, as explained by the Third Circuit, "[h]ad the agency applied the law as announced in *St. Cyr* to Petitioner's removal proceedings, he would have been eligible for a discretionary waiver under § 212(c)." *Gutierrez*, 125 F. App'x at 409. However, petitioner did not formerly seek review of the BIA's decision and his retained attorney ignored requests to file an appeal. *See id.* Accordingly, petitioner was removed back to Columbia. *See id.* After his removal and after the Supreme Court issued its decision in *St. Cyr*, petitioner filed a habeas corpus petition. *See id.* Initially, the District Court dismissed the petition because petitioner was in Columbia when he filed the petition, and thus, could not meet the custody requirement of the habeas statute. *See id.*

The petitioner in *Gutierrez* then filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) and argued that ineffective assistance of counsel should be considered in correcting the District Court's assumption that petitioner had made a decision through his counsel not to file a habeas petition while he was in immigration custody. *See* 125 F. App'x at 409. An evidentiary hearing was then conducted by Judge Hochberg, and she made the following findings:

> The court found that Petitioner ordered his attorney to file a habeas petition on numerous occasions prior to his removal, and that the attorney made affirmative misrepresentations to Petitioner and his family, repeatedly claiming that an "appeal" had already been filed. She also found that, despite the attorney's unilateral decision not to file the petition, Gutierrez reasonably believed that a habeas petition had been filed before his removal date, and that he "communicated such belief to the immigration officer, who searched in vain for a legal record of such filing." [*Gutierrez v. Ashcroft*, 289 F. Supp. 2d 555,] 560 [(D.N.J. 2003)]. Moreover, when Petitioner finally learned from the immigration officer on the late date of May 5, 2000, that no petition had been filed on his

> behalf, his family contacted the attorney, who then continued to lie
> to Petitioner's family, stating that "he would get in touch with the
> immigration officer to straighten things out." *Id.* at 566. Counsel's
> conduct was egregious and went well beyond mere fecklessness.

*Gutierrez*, 125 F. App'x at 410. Ultimately, Judge Hochberg granted habeas relief and ordered

the government to grant petitioner a § 212(c) hearing in accordance with *St. Cyr. See Gutierrez*,

125 F. App'x at 410.

In *Gutierrez*, one of the issues that the government raised on appeal to the Third Circuit

was whether the District Court should have considered petitioner's motion to amend the

judgment. *See* 125 F. App'x at 416. According to the government, it represented petitioner

getting a "second bite at the apple." *Id.* at 416-17. The Third Circuit, however, rejected this

argument by the government and stated as follows:

> [T]he District Court based its grant of the Motion to Reconsider on
> the need "to prevent manifest injustice," *Gutierrez,* 289 F.Supp.2d
> at 568, and to correct the "factually incorrect assumption by [the
> District] Court that the Petitioner had made a decision through his
> counsel not to file a habeas petition while Petitioner was in INS
> custody and before deportation," *id.* at 559. The need to prevent
> injustice and to correct errors on the record provides an
> independent basis for granting a motion under Rule 52(b) and
> 59(e), aside from the presence of previously undiscovered
> evidence. Therefore, the District Court did not abuse its discretion
> by entertaining Petitioner's Motion to Reconsider.

*Gutierrez*, 125 F. App'x at 417. Mr. Shnewer likens his case to *Gutierrez* by asserting that in his

case, "an omission of essential facts led to an incomplete record upon which a decision was

made." (Dkt. No. 40-1 at p. 12).

This Court finds *Gutierrez* distinguishable from Mr. Shnewer's case. In *Gutierrez*, as

noted above, the Third Circuit relied on the fact that the District Court needed to correct a

"factually incorrect assumption" that Gutierrez had made the decision not to file a habeas

petition prior to his deportation. *See* 125 F. App'x at 417. In Mr. Shnewer's case, however, this

Court does not have to correct a "factually incorrect assumption" from its decision that denied Mr. Shnewer's § 2255 motion. Indeed, this Court noted in its March 7, 2016 Opinion that Mr. Shnewer did not allege in any fashion whatsoever in his § 2255 motion that his decision not to testify was the result of attorney coercion due to Mr. Cipparone stating to him that he was unprepared to testify. That was, and still remains, a factually accurate statement. Mr. Shnewer never made that *specific* attorney coercion argument in his § 2255 motion. Rather, he only incorporated the Dukas' attorney coercion claims that *their* attorneys coerced *them* not to testify.

Mr. Shnewer's habeas counsel assert that they were aware of facts underlying this claim prior to this Court's denial of Mr. Shnewer's § 2255 motion. (*See* Dkt. No. 49 at p.5) Furthermore, they state that the fact that no request was made to supplement Mr. Shnewer's *pro se* § 2255 motion from the time they entered the case in December, 2015, until the time this case was decided in March, 2016, was their fault. (*See* Dkt. No. 40-1 at p.7) However, unlike *Gutierrez*, this is not a case where Mr. Shnewer's counsel assert that Mr. Shnewer specifically told them to file a motion to supplement his § 2255 motion to include specific allegations with respect to his attorney coercion claim. Additionally, it is worth noting that this case was fully briefed in 2014. Thus, presumably, this Court could have decided Mr. Shnewer's § 2255 motion even prior to Mr. Shnewer's habeas counsel entering this case.

This is a case of a strategic choice or error by Mr. Shnewer in failing to include any facts to support an attorney coercion claim in his *pro se* § 2255 motion and then his habeas counsel's strategic choice or error in failing to file a motion to supplement his *pro se* § 2255 motion. Under these specific circumstances, such choices and/or errors by Mr. Shnewer and his habeas counsel do not meet the high "manifest injustice" threshold. For these reasons, Mr. Shnewer is not

entitled to have this Court alter or amend his judgment under Federal Rule of Civil Procedure 59(e).

As previously stated, Mr. Shnewer also invokes Federal Rule of Civil Procedure 60(b)(6) to support his motion to alter or amend the judgment. He argues that his motion should not be considered a second or successive § 2255 motion because he is challenging a "defect in the integrity of [his] federal habeas proceedings." (Dkt. No. 49 at p.6) While this may be true, it is important to note that this "defect" was caused by Mr. Shnewer and his habeas counsel's own actions (or inaction) in this case. They were the cause of the failure to seek to supplement and provide factual allegations to support an attorney coercion claim. Thus, Mr. Shnewer fails to show extraordinary circumstances because he seeks relief from a judgment that resulted from his and his habeas counsel's own choices with respect to how he proceeded with his § 2255 motion. *See, e.g.*, *Michael*, 570 F. App'x at 180 (extraordinary circumstances rarely exists when party seeks relief from judgment that resulted from party's deliberate choices); *Katzenstein v. Dollar Gen. Corp.*, No. 14-6845, 2016 WL 525434, at *3 (D.N.J. Feb. 8, 2016) (Rule 60(b)6) should be used sparingly and may not be employed to rescue litigant from strategic choices that later turn out to be improvident); *Dively v. Seven Springs Farm, Inc.*, No. 10-0126, 2012 WL 5818319, at *4 (W.D. Pa. Nov. 15, 2012) (deliberate choices of inaction do not amount to extreme or unexpected hardship to warrant granting relief under Rule 60(b)(6)). Accordingly, Mr. Shnewer is also not entitled to relief under Rule 60(b)(6).

## V.      CONCLUSION

For the foregoing reasons, Mr. Shnewer's motion for relief from judgment will be denied.

An appropriate order will be entered.


DATED:  August  18, 2016                                    s/Robert B. Kugler
                                                            ROBERT B. KUGLER
                                                            United States District Judge